IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

DAN K. JENKINS                                        §

VS.                                                   §        CIVIL ACTION NO. 2:04cv264

COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION          §

## MEMORANDUM OPINION

On July 14, 2004, Plaintiff initiated this civil action pursuant to the Social Security Act (The

Act), Section 205(g), for judicial review of the Commissioner's denial of Plaintiff's application for

Social Security benefits.

### Procedural History

On November 17, 2000, Plaintiff filed a Title II application and a Title XVI application, each

alleging inability to work. Plaintiff alleges inability to work due to a sprained or fractured knee and

bad back. *Tr*. at 69 and 75. Plaintiff timely filed a request for a hearing before an Administrative

Law Judge (ALJ). After a hearing, the ALJ denied benefits.

On June 7, 2004, the Appeals Council denied Plaintiff's request for review. *Tr*. at 6.

Consequently, the ALJ's decision became the Commissioner's decision. *See Sims v. Apfel*, 530 U.S.

103 (2000); 20 C.F.R. §§ 404.900(a)(4)-(5), 404.955, 404.981, and 422.210(a). Plaintiff sought

review by this Court.

### Standards

In reviewing a denial of Social Security disability benefits, a federal court carefully considers

the following:

1.   standards of both judicial review and entitlement to Social Security benefits (*Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000));

2.   the transcript and record (*Jimmerson v. Apfel, Comm'r of Soc. Sec.*, 111 F. Supp. 2d 846, 846 and 849 (E.D. Tex. 2000); *cf. Jackson v. Apfel, Comm'r of Soc. Sec.*, 234 F.3d 246 (5th Cir. 2000) (considering the record)); and

3.   the parties' briefs (*Jackson*, 234 F.3d 246).

In federal judicial review of the denial of Social Security disability benefits, a strong presumption exists in favor of the defendant. *Jimmerson*, 111 F. Supp. 2d at 849.

A federal court reviews the Commissioner's determination that a claimant was not disabled only to determine whether he applied the proper legal standard and whether the determination is supported by substantial evidence. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994), *cert. denied*, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g). A federal court must affirm the Commissioner's determination that a claimant was not disabled unless that determination either is not supported by substantial evidence or involved an erroneous application of legal standards in evaluating the evidence. *Carey v. Apfel, Comm'r of Soc. Sec.*, 230 F.3d 131, 135 (5th Cir. 2000); *cf. Masterson*, 309 F.3d at 272.

Substantial evidence is "more than a scintilla but less than a preponderance." *Masterson*, 309 F.3d at 272. Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Myers v. Apfel, Comm'r of Soc. Sec.*, 238 F.3d 617 (5th Cir. 2001). In Social Security cases, substantial evidence must do more than create a mere suspicion of the existence of the facts to be established. *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989); *Jimmerson*, 111 F. Supp. 2d at 847.

2

Medical records play a significant role in reviewing the ALJ's decision. *Greenspan*, 38 F.2d at 238.  In determining whether substantial evidence supports the decision, a court considers the following medical evidence:

1.     objective medical facts (*Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); Social Security Ruling (SSR) 96-7p; *cf*. 20 C.F.R. § 404.1529(c)(2));

2.     medical sources' statements (SSR 96-7p; *cf*. 20 C.F.R. § 404.1529(c)(2)) and reports (*Loza v. Apfel, Comm'r of Soc. Sec.*, 219 F.3d 378, 393 (5th Cir. 2000)); SSR 96-7p; *see also Richardson*, 402 U.S. at 402; *cf*. 20 C.F.R. § 404.1529(c)(2), including clinical findings (*Homan v. Comm'r of Soc. Sec. Admin.*, 84 F. Supp. 2d 814, 818 (E.D. Tex. 2000)); *see also Fraga v. Bowen*, 810  F.2d 1296, 1302 n. 4 (5th Cir.1987)) and treating and examining physicians' diagnoses and opinions (*Martinez*, 64 F.3d at 174);

3.     the claimant's medical history (*Loza*, 219 F.3d at 393; *see also* 20 C.F.R. § 404.1512(b)(1)-(6));

4.     statements and reports from the claimant, treating or examining sources, and other persons about the claimant's medical history, treatment, and response (SSR 96-7p; *cf*. 20 C.F.R. § 404.1529(c)(2)); and

5.     other information concerning the claimant's symptoms and how they affect the claimant's ability to work (SSR 96-7p; *cf*. 20 C.F.R. § 404.1529(c)(2)).

Generally, the opinions, diagnoses, and medical evidence of a treating physician familiar "with the claimant's injuries, treatment, and responses should be accorded considerable weight in determining disability." *Loza*, 219 F.3d at 395.

A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel, Comm'r of Soc. Sec.*,  239 F.3d 698 (5th Cir. 2001).  If substantial evidence supports the denial, then a court must accept it. *Brown v. Apfel*, 192 F.3d 492 (5th Cir. 1999); *Jimmerson*, 111 F. Supp. 2d at 848; *see also* 42 U.S.C. § 405(g).  A federal

court may consult Social Security Administration (SSA) rulings if the statute at issue provides little guidance. *Myers*, 238 F.3d 617.

A claimant has an ordinary disability only if the impairment(s) is so severe that it prevents the successful performance of not only past work, but also, considering age, education, and work experience, any other work existing in the national economy. *Loza*, 219 F.3d at 390; *Greenspan*, 38 F.3d at 236; 42 U.S.C. § 423(d)(2)(A); *cf.* 20 C.F.R. § 404.1520(c). To determine disability, the Commissioner uses a five-step analysis. *Boyd*, 239 F.3d 698; *Greenspan*, 38 F.3d at 236; 20 C.F.R. § 404.1520. At steps one through four, the claimant has the burden of proof. *Masterson*, 309 F.3d at 272; 20 C.F.R.§ 404.1520. If he carries the burden at steps one through three, then he has shown that he is disabled, and the analysis ends. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987); *Boyd*, 239 F.3d 698; 20 C.F.R. § 404.1520(f); Acquiescence Ruling 00-4(2); *see also Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272. If he fails to satisfy step three, but carries the burden at step four, then the burden shifts to the Commissioner at step five. *Bowen*, 482 U.S. at 146 n. 5 (1987); *Boyd*, 239 F.3d 698; 20 C.F.R. § 404.1520(f); Acquiescence Ruling 00-4(2); *see also Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272. A finding that the claimant is or is not disabled at any point in the five-step process is conclusive and terminates the analysis. *Boyd*, 239 F.3d at 705.

At step one, to qualify for Social Security disability benefits the claimant must not be working presently at any substantially gainful activity. *Id.* at 704; *Greenspan*, 38 F.3d at 236; 20 C.F.R. § 404.1520(a)-(b). At step two, to qualify for Social Security disability benefits the claimant must have a severe impairment. *Boyd*, 239 F.3d 698; *Greenspan*, 38 F.3d at 236; 20 C.F.R. § 404.1520(c).

4

At step three the Commissioner compares the medical evidence of the claimant's impairment(s) to the impairments listed in the regulations appendix. *Shave v. Apfel, Comm'r of Soc. Sec.*, 238 F.3d 592 (5th Cir. 2001); 20 C.F.R. § 404.1520(d); *see also Boyd*,  239 F.3d 698; *Greenspan*, 38 F.3d at 236.  The impairment list is in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Boyd*, 239 F.3d 698; 20 C.F.R. § 404.1520(d).  If the claimant's impairment meets or equals a listed impairment, then he qualifies for benefits without further inquiry. *Boyd*, 239 F.3d 698; *Greenspan*, 38 F.3d at 236; *see also* 20 C.F.R. § 404.1520(b)-(e).  If the claimant's impairment does not match or equal a listed impairment, then the evaluation proceeds to step four. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *Greenspan*, 38 F.3d at 236; 20 C.F.R. § 404.1520(e).

At steps four and five, the Commissioner determines whether, considering the claimant's age, education, and work experience, he can do his own past work or any other work existing in the national economy; if not, then he qualifies for benefits. *Myers*, 238 F.3d 617; *Greenspan*, 38 F.3d at 236; 20 C.F.R. § 404.1520(b)-(f)).  The issue at step four is whether the claimant's impairment prevents him from performing his past relevant work.  *Greenspan*, 38 F.3d at 236; 20 C.F.R. § 404.1520(e).  The residual functional capacity assessment is used "to determine whether an individual is able to do past relevant work." SSR 96-8p at 2.

Residual functional capacity is a medical assessment of what a claimant can do in a work setting despite the functional limitations and environmental restrictions imposed by all of his medically determinable impairments. SSR 83-10 at 7.  The residual functional capacity assessment identifies the claimant's functional limitations or restrictions and assesses the claimant's work-related abilities on a function-by-function basis, including the functions of walking, standing, and sitting. 20 C.F.R. § 404.1545(b); SSR 96-8p at 1.  A claimant's residual functional capacity is determined

5

by combining a medical assessment of the claimant's impairments with descriptions by physicians, the applicant, or others of any limitations on the claimant's ability to work. *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988). SSA assesses residual functional capacity based on all relevant evidence of a claimant's ability to do work-related activities. SSR 96-8p. At step four, if the claimant is capable of performing his past relevant work, then he is not disabled. *Boyd*, 239 F.3d 698; *Greenspan*, 38 F.3d at 236; 20 C.F.R. § 404.1520(e).

At step five the Commissioner must show that in light of the claimant's residual functional capacity, age, education, and past work experience, the claimant's impairment does not prevent him from performing any other work. *Loza*, 219 F.3d at 390. SSA determines whether the claimant can perform any other kind of substantially gainful employment according to the Medical-Vocational Guidelines. *Haywood*, 888 F.2d at 1466; *Jimmerson*, 111 F. Supp. 2d at 848.

If the Commissioner meets this burden, then the claimant must prove that he cannot perform the alternate work. *Boyd*, 239 F.3d at 698. An ALJ may base a finding that a claimant is capable of performing jobs available in the national economy based on a vocational expert's testimony identifying jobs. *Carey*, 230 F.3d at 135 and 147. If a claimant cannot do his past work or other work, then the claimant qualifies for benefits. *Loza*, 219 F.3d at 390; *see also Sullivan*, 493 U.S. at 525-26; 20 C.F.R. § 404.1520(e)-(f).

The ALJ is the fact finder. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). The ALJ has sole responsibility for determining a claimant's disability status. *Newton*, 209 F.3d at 455. *Loza*, 219 F.3d at 399.

An ALJ evaluates each medical opinion he receives. 20 C.F.R. § 416.927(d). In disability proceedings, the administrative agency administering the Social Security benefits program has

6

discretion to make credibility choices between conflicting medical evidence.  *See Floyd v. Bowen*, 833 F.2d 529, 532 (5th Cir. 1987).

The authority to determine credibility belongs to the ALJ, who weighs credibility in making fact findings.  *Greenspan*, 38 F.3d at 237.  The ALJ has broad discretion in determining the credibility of medical experts and weighing their opinions.  *Ferguson v. Secretary of HHS*, 919 F. Supp. 1012, 1021 (E.D. Tex. 1996); *cf. Greenspan*, 38 F.3d at 237; *Lewis v. Secretary of HHS*, 782 F. Supp. 56, 58 (E.D. Tex. 1991).  The ALJ may also determine the credibility of medical reports.  *Eaves v. Secretary of HHS*, 877 F. Supp. 334 (E.D. Tex. 1995).

A "treating physician's opinions are not conclusive." *Newton*, 209 F.3d at 455.  The ALJ may give less weight to a treating physician's opinion if good cause is shown for doing so.  *Loza*, 219 F.3d at 395; *Greenspan*, 38 F.3d at 237.  The ALJ can reject a treating physician's opinion if the evidence supports a contrary conclusion.  *Martinez*, 64 F.3d at 176.

If SSA disregards a treating physician's opinion, a court must scrutinize the record to determine whether the Commissioner weighed the opinion and determined whether it was consistent with the medical signs and findings.  *Hollis*, 832 F.2d at 867.  If the ALJ disregards a treating physician's opinion, a court must scrutinize the ALJ's decision to determine whether the ALJ:

1.  reviewed all the relevant evidence (*Barajas v. Heckler*, 738 F.2d 641, 645 (5th Cir. 1984));

2.  carefully considered the opinion (*Babineaux v. Heckler*, 743 F.2d 1065, 1069 (5th Cir. 1984));

3.  weighed the opinion (*Brady v. Apfel*, 41 F. Supp. 2d 659, 668 (E.D. Tex. 1999));

4.      made his decision based on evidence contradicting the treating physician's opinion (*Milam v. Bowen*, 782 F.2d 1284, 1287 (5th Cir. 1986); and/or

5.      made a credible choice (*Barajas*, 738 F.2d at 645).

## Facts

### *Background – Age and Education*

Plaintiff was born in 1959 and has some college education. *Tr*. at 69 and 81. Plaintiff alleges a disability onset date of October 1, 2000. *Tr*. at 69 and 75.

### *Medical Facts and Opinions*

Medical evidence includes the following medical records:

*Marshall Regional Medical Center*

On September 24, 2000, Plaintiff presented to the emergency room with complaints of a swollen right knee which was noted to be swollen and warm to the touch. *Tr*. at 119. X-ray of the right knee showed a nondisplaced fracture of the patella and bone lesions in the distal and proximal femur, which appeared to be bone infarcts. *Tr*. at 119-20.

*Good Shepherd Medical Center*

On February 3, 2001, Plaintiff was shot in the left ankle. *Tr*. at 126-27. Plaintiff had a discharge diagnosis of a gunshot wound to the left medial mallelous, with fracture, and a talar dome fracture. *Tr*. at 126. Plaintiff had been smoking crack at the time. *Tr*. at 126. He had a history of abdominal surgery and a stab wound to the chest. *Tr*. at 126. He underwent incision, drainage, and fixation of the medial mallelous and of the talar dome and was placed in an external fixator. *Tr*. at 126.

*Consultative Examiner John F. Nielson, M.D.*

8

Dr. Nielson's March 2001 examination report indicated that Plaintiff was status post 9 mm gunshot wound to the left talus and that he currently had K pins stabilizing the talus. *Tr.* at 131. Plaintiff was unable to bear weight and was using crutches. *Tr.* at 131.

*Treating Surgeon Dr. Stephen Littlejohn*

Dr. Littlejohn's May 30, 2001, record indicates his opinion that he did not believe Plaintiff would be able to work on his left leg for some time. *Tr.* at 149. Dr. Littlejohn indicated that he would not be surprised if Plaintiff were out of work for a year, and he noted that Plaintiff may always have difficulty walking on that foot. *Tr.* at 149.

On June 29, 2001, Dr. Littlejohn said that despite previous surgery, Plaintiff must undergo ankle fusion surgery. *Tr.* at 134. Dr. Littlejohn planned to set a time for surgery at Plaintiff's next follow-up appointment, scheduled for July 11, 2001. *Tr.* at 134. On July 11, 2001, Dr. Littlejohn opined that the talus basically was dead and that the only hope was to fuse the calcaneus. *Tr.* at 149.

In July 2001 Plaintiff fractured his right ankle. *Tr.* at 151. He underwent an open reduction with internal fixation of a right bimallelor ankle fracture on July 16, 2001. *Tr.* at 151. On July 25, 2001, Dr. Littlejohn noted that Plaintiff had been walking on his right ankle even though he was not supposed to and that he came in without crutches that day. *Tr.* at 149-50. Dr. Littlejohn instructed him to put on his boot walker, stop walking on his ankle, go home, and elevate his foot. *Tr.* at 149-50. Plaintiff had no complaints, his x-rays looked excellent, and he was scheduled for a follow-up visit in two weeks. *Tr.* at 149-50.

On August 22, 2001, Dr. Littlejohn opined that Plaintiff had a gunshot wound to the left talus and his blood supply to that bone was interrupted. *Tr.* at 148. Dr. Littlejohn said that Plaintiff's only option to decrease some of his pain was an ankle fusion, and that this would be a permanent disability

9

for him.  *Tr.* at 148.  Dr. Littlejohn said that Plaintiff still would be able to walk but would have difficulty working on his ankle all day and that he probably needed financial support until he could be retrained to do something else.  *Tr.* at 148.

*Disability Determination Services*

At the initial and reconsideration levels, Plaintiff was diagnosed with chronic back pain and status post gunshot wound to the left ankle.  *Tr.* at 52-53.

**The Hearing**

At the hearing, only Plaintiff testified.  *Tr.* at 31.  Plaintiff testified that he had a fractured patella in the right knee in September 2000.  *Tr.* at 42.  On February 2, 2001, he received a gunshot wound in his left ankle (*Tr.* at 43) and was treated at a hospital (*Tr.* at 41).  Afterward, his condition improved.  *Tr.* at 41.  Subsequently he tripped on a brick and broke his ankle.  *Tr.* at 42.  On July 16, 2001, he had surgery on his ankle.  *Tr.* at 41-42.  He also fractured his right ankle, which is improving but is hurt and occasionally swells; he cannot put much weight on it.  *Tr.* at 43.  His left knee swells when he puts much pressure on his ankle.  *Tr.* at 43.

He has a crutch, which is difficult to use, and he does not use it all the time.  *Tr.* at 44.  Dr. Littlejohn told him that he needed to use his crutches or his ankle might not heal properly.  *Tr.* at 48.

He drives, does errands, and grocery shops.  *Tr.* at 45.  He can lift ten pounds.  *Tr.* at 47.  He has no trouble sitting.  *Tr.* at 46.  He can stand for about one hour before he must either sit or hold on to something.  *Tr.* at 47.  His left ankle swells when he stands on it too long or leaves a shoe on too long.  *Tr.* at 49.  When his ankle swells, he elevates it about one foot high for two or three hours.  *Tr.* at 50.

**ALJ's Decision**

10

On June 27, 2002, the ALJ issued an opinion denying benefits to Plaintiff.  *Tr*. at 24. Following the five-step evaluation process, the ALJ found at step one that Plaintiff was not engaged in substantially gainful activity.  At step two the ALJ determined that Plaintiff has severe impairments related to status post gunshot wound to the left ankle and status post fracture and repair of the right ankle.  *Tr*. at 19 and 23.  At step three the ALJ found that Plaintiff's impairments did not meet or equal a listed impairment.  *Tr*. at 19 and 23.

At step four the ALJ found that Plaintiff retained the residual functional capacity to perform sedentary work.  *Tr*. at 23-24.  After evaluating Plaintiff's claims of impairment, the ALJ considered Plaintiff's complaints of pain to determine whether they would further limit his residual functional capacity.  After considering the medical evidence and Plaintiff's assertions, the ALJ determined that Plaintiff's subjective complaints were not entirely supported by the medical evidence and not entirely credible.

The ALJ found that Plaintiff cannot perform his past relevant work.  *Tr*. at 24.  The ALJ found that Medical-Vocational Guideline 201.28 directed a determination that Plaintiff was not disabled. *Tr*. at 24.  Therefore, the ALJ concluded that Plaintiff is not entitled to a period of disability or disability insurance benefits under the Act.  *Tr*. at 24.

### Discussion

The issues of the case are as follows:  (1) whether Dr. Littlejohn's August 2002 statement that Plaintiff certainly needs an ankle fusion (*Tr*. at 172) demonstrates, along with the entire record evidence, that Plaintiff established a § 1.03(B) impairment more than twelve months after his first February 2001 ankle fracture, (2) whether the ALJ failed to give adequate weight to the opinions of

11

treating surgeon Dr. Stephen Littlejohn and consultative examiner Dr. John Nielsen, and (3) whether the ALJ improperly denied Plaintiff's benefits because of prior, non-material drug use.

**1.      *Whether Dr. Littlejohn's August 2002 statement that Plaintiff certainly needs an ankle fusion (Tr. at 172), demonstrates, along with the entire record evidence, that Plaintiff established a § 1.03(B) impairment more than twelve months after his first February 2001 ankle fracture***

Title 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.03, addresses arthritis of a major weight-bearing joint.  To establish § 1.03(B) arthritis of a major weight-bearing joint of the required severity, a claimant must establish the following three elements:  (1) a history of persistent joint pain and stiffness (20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.03); (2) signs of marked limitation of motion or abnormal motion of the affected joint on current physical examination (20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.03); and (3) reconstructive surgery or surgical arthrodesis of a major weight-bearing joint and return to full weight-bearing status did not occur, or is not expected to occur, within 12 months of onset (20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.03(B)).

On March 28, 2001, consultative examiner Dr. John Nielsen opined that Plaintiff has "really no range of motion of his [left] ankle."  *Tr.* at 133.  On June 29, 2001, treating surgeon Dr. Stephen Littlejohn opined that after ankle fusion, Plaintiff would be disabled for six months.  *Tr.* at 134.  On August 22, 2001, Dr. Littlejohn opined that Plaintiff's ankle pain was going to be a permanent disability for him.  *Tr.* at 148.  Dr. Littlejohn opined that Plaintiff's only option to decrease his pain was an ankle fusion.  *Tr.* at 148.

Plaintiff points out only one medical record opinion documenting his pain.  This one medical record does not constitute a showing of a history of persistent joint pain.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.03.  Plaintiff points out only one medical record opinion that he had marked

limitation of motion or abnormal motion of the affected joint.  This one medical record does not constitute a showing of a history of persistent joint stiffness.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.03.  Dr. Littlejohn's June 29, 2001, statement that after ankle fusion Plaintiff would be disabled for six months (*Tr.* at 134) does not show that after reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, return to full weight-bearing status did not occur, or was not expected to occur, within twelve months of onset (*see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.03(B)).

Plaintiff has not shown that Dr. Littlejohn's August 2002 statement that Plaintiff certainly needs an ankle fusion (*Tr.* at 172), demonstrates, along with the entire record evidence, that Plaintiff established a § 1.03(B) impairment more than twelve months after his first February 2001 ankle fracture.  Plaintiff's contention, therefore, lacks merit.

**2.    *Whether the ALJ failed to give adequate weight to the opinions of treating surgeon Dr. Stephen Littlejohn and consultative examiner Dr. John Nielsen's opinions that the blood supply to Plaintiff's foot was interrupted even after surgery and that Plaintiff is unable to bear weight on his left leg***

Plaintiff notes that the ALJ said that he could not give controlling weight to Dr. Littlejohn's opinion because it only speaks to his ability to stand while working, and there is no indication that Plaintiff was not expected to heal within a year following the surgery on his right ankle.  *Tr.* at 21. Plaintiff contends that this statement does not take into consideration the record evidence that Plaintiff fractured both ankles and that corrective surgery on the left could not be performed due to subsequent fracture of the right.  Plaintiff contends that the ALJ did not even purport to weigh Dr. Littlejohn's opinion in the ALJ's decision and did not consider Plaintiff's need to elevate his leg.

Plaintiff contends that the ALJ failed to give adequate weight to the following opinions of Dr. Littlejohn:

13

1.      Even with an ankle fusion, Plaintiff's left foot would be a permanent
        disability.  *Tr.* at 148.

2.      Plaintiff's ankle was "dying," "dead," "collapsed," "destroyed," and
        "non-weightbearing."  *Tr.* at 135-37 and 148.

3.      The blood supply to Plaintiff's foot was "interrupted," even after
        surgery.  *Tr.* at 149.

4.      Plaintiff needed repeat surgery.  *Tr.* at 134.

5.      Plaintiff's left foot injury was not healing and an anticipated surgery
        to correct the problem was delayed by the repair and healing of a right
        foot fracture.  *Tr.* at 21.

Plaintiff also contends that Dr. Nielsen said that Plaintiff is unable to bear weight on his left leg.  *Tr.*

at 130.

        None of these cited medical opinions show a history of persistent joint pain and stiffness, so

these opinions would not establish a  § 1.03(B) impairment.  Plaintiff cites the following medical

opinions related to his residual functional capacity to walk and stand:

1.      Plaintiff was unable to ambulate effectively throughout an eight-hour
        workday without hand-held assistive devices, should keep off his left
        foot (*Tr.* at 149-50), and is unable to bear weight on his left leg (*Tr.* at
        130); and

2.      Dr. Littlejohn indicated that Plaintiff was unable to ambulate
        effectively throughout an eight-hour workday without the use of hand-
        held devices.

        Plaintiff does not point out any evidence of record that Dr. Littlejohn's alleged indication that

Plaintiff was unable to ambulate effectively throughout an eight-hour workday without the use of

hand-held devices.  Dr. Littlejohn's records show that Plaintiff underwent an open reduction with

internal fixation of a right bimallelor ankle fracture on July 16, 2001.  *Tr.* at 151.  On July 25, 2001,

Dr. Littlejohn noted that Plaintiff had been walking on his right ankle even though he was not

14

supposed to and that he came in without crutches that day. *Tr.* at 149-50.  Dr. Littlejohn instructed

him to put on his boot walker, stop walking on his ankle, go home, and elevate his foot. *Tr.* at 149-

50.  Plaintiff cites these records to show that he must keep off of his left foot. *Tr.* at 149-50.  Dr.

Littlejohn's instruction for Plaintiff to stay off of his foot was nine days after his open reduction with

internal fixation of a right bimallelor ankle fracture.  Dr. Littlejohn also noted, with that instruction,

that Plaintiff would return in two weeks for a follow-up.  This record does not indicate that Plaintiff

has an ongoing need to stay off of his foot.

Dr. Nielsen's April 4, 2001, record states that Plaintiff was unable to bear weight on his left

leg. *Tr.* at 130.  This record predates Plaintiff's open reduction with internal fixation of a right

bimallelor ankle fracture on July 16, 2001.  *See Tr.* at 151.  Even before the ankle fusion, Dr.

Littlejohn opined on May 23, 2001, that Plaintiff had difficulty walking without the boot on. *Tr.* at

135.  That statement implies that Plaintiff could bear weight on that foot with the boot on.

On May 30, 2001, Dr. Littlejohn opined that Plaintiff would not be able to work on that leg

for quite some time and may always have difficulty walking on his foot. *Tr.* at 135.  That statement

implies that he expected Plaintiff to be able to work on that leg at some time in the future even though

walking might be difficult.  On August 22, 2001, Dr. Littlejohn opined that Plaintiff would still be

able to walk after his ankle fusion. *Tr.* at 148.

Consultative examiner Dr. Nielsen's April 4, 2001, statement that Plaintiff was unable to bear

weight on his left leg at that time (*Tr.* at 130) does not sufficiently rebut... the ALJ's finding that

Plaintiff can stand and/or walk for two hours in an eight-hour workday (*Tr.* at 23).  Furthermore,

Plaintiff testified that he does not always need his crutches when walking but keeps them nearby. *Tr.*

at 44-45.

15

Plaintiff cites Dr. Littlejohn's July 16, 2001, record (*Tr.* at 149-50) to show that Plaintiff would need to elevate his left leg when sitting.  As discussed previously, Dr. Littlejohn's records show that Plaintiff underwent an open reduction with internal fixation of a right bimallelor ankle fracture on July 16, 2001. *Tr.* at 151.  On July 25, 2001, Dr. Littlejohn noted that Plaintiff had been walking on his right ankle even though he was not supposed to and that he came in without crutches that day. *Tr.* at 149-50.  Dr. Littlejohn instructed him to put on his boot walker, stop walking on his ankle, go home, and elevate his foot. *Tr.* at 149-50.  This record does not indicate that Plaintiff has an ongoing need to elevate his left leg when sitting.

The ALJ found that Plaintiff can perform the full range of sedentary work. To be capable of performing sedentary work, a claimant must be able to stand occasionally (*Vaughan v. Shalala*, 58 F.3d 129, 131 n. 1 (5th Cir. 1995)); walk occasionally (*Id.*; 20 C.F.R. § 404.1567(a); SSR 83-10 at 5); sit for approximately six hours out of an eight-hour work day (*Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *cf.* 20 C.F.R. § 404.1567(a)), with a morning break, a lunch period, and an afternoon break at approximately two-hour intervals (SSR 96-9p at 6); lift ten pounds at a time (*Ripley*, 67 F.3d at 557; 20 C.F.R. § 404.1567(a); SSR 83-10 at 5); and occasionally lift or carry articles like docket files, ledgers, and small tools (*Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); 20 C.F.R. § 404.1567(a); SSR 83-10 at 5).

The ALJ did not find that Plaintiff must have a hand-held assistive device.  *See Tr.* at 23-24. To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (*i.e.*, whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).  SSR 96-9p at 7.

16

Plaintiff has not cited any medical record showing that he had an ongoing need for a hand-held assistive device.  Furthermore, even if a medically required hand-held assistive device is needed, the unskilled sedentary occupational base will not ordinarily be significantly eroded.  *See* SSR 96-9p at 7.  Plaintiff's contention that the ALJ failed to give adequate weight to the opinions of treating surgeon Dr. Stephen Littlejohn and consultative examiner Dr. John Nielsen lacks merit.

**3.      *Whether the ALJ improperly discredited, because of prior non-material drug use, Plaintiff's complaints of left ankle swelling, severe chronic pain in his left ankle, and difficulty ambulating effectively because of his right ankle and right knee***

The ALJ found that Plaintiff's tendencies toward polysubstance abuse do not negate disability but diminish his overall credibility.  *Tr*. at 22.  The ALJ noted that Plaintiff reported drinking a fifth of bourbon per week for ten years.  *Tr*. at 22.  The ALJ also noted that Plaintiff's gunshot wound occurred when he was admittedly smoking crack cocaine.  *Tr*. at 22.

Plaintiff contends that the ALJ should have, instead, considered the 20 C.F.R. § 404.1529(c) credibility factors.  Title 20 C.F.R. §§ 404.1529(c)(4) says that whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record and must consider the following:

1.      the claimant's daily activities;

2.      the location, duration, frequency, and intensity of the claimant's pain or other symptoms;

3.      factors that precipitate and aggravate the symptoms;

4.      the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;

17

5.  treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms;

6.  any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.  any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  SSR 96-7p at 2-3 (citing 20 C.F.R. §§ 404.1529(c)(4) and 16.929(c)(4)).

The ALJ noted that he considered these factors.  *Tr.* at 21.

Plaintiff does not point out any specific evidence of the following that the ALJ failed to consider:

1.  Plaintiff's daily activities;

2.  the frequency and intensity of his pain or other symptoms;

3.  factors that precipitate the symptoms;

4.  the type, dosage, effectiveness, and side effects of any medication he takes or has taken to alleviate pain or other symptoms; and

5.  any measures other than treatment the claimant uses or has used to relieve pain or other symptoms.

Plaintiff says that he underwent several x-rays and extensive medical treatment including two intrusive surgeries, one on each foot; that his treating physician suggested that Plaintiff's right ankle and right knee may exacerbate his difficulty maintaining effective ambulation; and that his left ankle was dead, collapsed, and destroyed.  Plaintiff contends that Dr. Littlejohn indicated that Plaintiff was unable to ambulate effectively throughout an eight-hour workday without the use of hand-held devices; however, Plaintiff does not point out any record evidence of this alleged medical opinion.

18

Relevant to the location and duration of Plaintiff's pain or other symptoms, the ALJ noted medical evidence of, and treatment of, Plaintiff's symptoms from September 24, 2000, through July 25, 2001.  *Tr.* at 19-22.  The ALJ noted that this evidence included multiple x-rays.  *Tr.* at 19-20.  He noted that Dr. Littlejohn described Plaintiff's talar dome as "collapsed" (*Tr.* at 20) and "dying" (*Tr.* at 19).  The ALJ noted multiple surgeries on Plaintiff's feet, including surgeries on both feet.  *Tr.* at 19-21.

The ALJ did not specifically mention that Dr. Littlejohn described Plaintiff's ankle as "destroyed."  Plaintiff has not shown that the ALJ's failure to mention Dr. Littlejohn's reference to Plaintiff's ankle as "destroyed," rather than just "collapsed," and "dying," undermines the ALJ's finding that Plaintiff's assertions are not entirely credible.  Plaintiff has not shown that Dr. Littlejohn's reference to Plaintiff's ankle as "destroyed," renders him unable to perform sedentary work.  Plaintiff's contention that  the ALJ improperly denied Plaintiff's benefits because of prior, non-material drug use lacks merit.

### Conclusion

Having reviewed the record, this Court determines that the record shows that the Administration correctly applied the applicable legal standards and that substantial evidence supports the Administration's determination that Plaintiff is not disabled.  In light of the foregoing, the above-entitled Social Security action is dismissed with prejudice.

SIGNED this 28th day of September, 2007.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE

19